## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re:<br><br>LOUIS N. DELLOSO,<br><br>    Debtor. | Chapter 7<br><br>Case No. 16-10832 (CTG)<br><br>**Related Docket No. 17** |

### <u>MEMORANDUM OPINION</u>

Debtor Louis N. Delloso filed a chapter 7 bankruptcy case in early 2016. Within a few months, the chapter 7 trustee determined that there were no assets to administer, Delloso received a discharge, and the bankruptcy case was closed.

More than five years later, Kapitus, a creditor, moves to reopen the case.[1] Kapitus alleges that it purchased receivables from a business owned by the debtor (known as Greenville Concrete) and that the debtor guaranteed Greenville Concrete's performance under that receivables agreement. After the Greenville Concrete defaulted, the parties entered into a forbearance agreement under which Kapitus would forgive the debt in exchange for payment of $85,000 over five years. But after Greenville Concrete defaulted under the forbearance agreement, Kapitus now alleges that it is entitled to be paid more than $775,000 (the original debt plus interest).

Kapitus alleges that Delloso, prior to filing the bankruptcy, closed Greenville Concrete, transferred all of the assets to a new entity that he also owned (known as Bari Concrete), and failed to disclose the ownership of Bari Concrete on his

---

[1] Strategic Funding Source, Inc. does business by the name "Kapitus." It is referred to by that name herein.

bankruptcy schedules.[2]  Kapitus thus seeks to (i) bring an adversary proceeding alleging that Delloso's debt to it is non-dischargeable under section 523(a) and (ii) have the Court revoke the debtor's discharge under section 727(d).  Alternatively, Kapitus asks the Court to reopen the bankruptcy case so that the trustee can administer the previously undisclosed asset – Delloso's interest in Bari Concrete.

If Kapitus' allegations are true, they are certainly troubling.  The claim is that Delloso hid assets from the trustee and thereby kept for himself assets that ought to have been available to satisfy his creditors' claims.  Delloso denies these allegations.  The Court need not decide which side is telling the truth.  As concerning as the allegations may be, even if they are true, they do not provide sufficient reason to reopen Delloso's bankruptcy case.

Just as Kapitus seeks to hold Delloso to the strict terms of the parties' forbearance agreement (seeking to recover more than ten times the amount it had otherwise agreed to accept) it is subject to the strict rules that require creditors to act within specified time periods in order to assert their rights.  The Federal Rules of Bankruptcy Procedure impose specific time limits on the assertion of claims such as those Kapitus seeks to bring under §§ 523(a) and 727(d).  While Kapitus is correct that these time limits are not "jurisdictional," that does not mean that courts have the authority to extend them, through doctrines such as equitable tolling or otherwise.  Because the claims that Kapitus seeks to bring are both time-barred, the

---

[2] Greenville Concrete LLC is referred to herein as "Greenville Concrete."  The new entity is Bari Concrete Construction Corp. and is referred to herein as "Bari Concrete."

Court will not reopen the case for the purpose of asserting them. And because Kapitus has an appropriate and sufficient remedy under non-bankruptcy law in an already pending lawsuit in state court in New York to recover on account of any transfer Delloso might have caused to be made between Greenville Concrete and Bari Concrete, the Court will not reopen the bankruptcy to have a trustee administer the allegedly undisclosed asset – Delloso's equity interest in Bari Concrete. The Court will thus deny the motion. [3]

## Factual and Procedural Background

In March 2016, the debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code.[4] Alfred Giuliano was appointed as the chapter 7 trustee. Upon review of the debtor's financial records and an inquiry into his financial affairs, Giuliano reported that there was no property available for distribution to creditors.[5] Because this was a no-asset case, Giuliano issued the standard notice indicating that creditors should not file proofs of claim unless and until it appeared that assets would be available for distribution.[6] Because none were, Kapitus had no reason to, and did

---

[3] Fed. R. Bankr. P. 9014(c) provides that a court may apply any of the Part VII rules otherwise governing adversary proceedings to a contested matter. As stated on the record of the hearing held on March 14, 2022, because the Court has not conducted (and does not believe it necessary to conduct) an evidentiary hearing on the motion to reopen, the Court will resolve the motion to reopen under the motion to dismiss standard applicable under Fed. R. Bankr. P. 8. The Court accordingly accepts as true, for purposes of deciding the motion, the factual allegations set forth in Kapitus' motion.

[4] D.I. 1.

[5] D.I. 11.

[6] D.I. 4 at 2.

not, file a proof of claim.  In July 2016, the Court granted the debtor's discharge.[7]  In August 2016 the Court closed the case.[8]

Kapitus' claims against the debtor stem from an alleged default on agreements from 2011 under which Kapitus purchased approximately $900,000 in receivables from Greenville Concrete.[9]  Kapitus alleges that Greenville Concrete breached the agreement when it failed to deposit the receivables in a certain account as required under the agreement.[10]

In 2013, Kapitus sued Greenville Concrete and Delloso in the New York Supreme Court seeking to recover the amounts owed under the agreement.[11]  The parties then entered into a stipulation of settlement under which Greenville Concrete and Delloso agreed to make weekly payments to Kapitus of approximately $300 per week until $85,000 was paid to Kapitus.[12]  The settlement further provided, however, that in the event of a default, Kapitus would be entitled to a judgment of more than $650,000 – representing the entire amount outstanding under the receivables agreement – plus interest that would accrue at a 9 percent annual rate.[13]

---

[7] D.I. 12.

[8] D.I. 16.

[9] D.I. 17 ¶ 9.

[10] *Id.* ¶ 13.

[11] *Id.* ¶ 19.

[12] *Id.* 17 ¶¶ 20–21.  The debtor entered into the settlement on behalf of Greenville and individually as guarantor.

[13] *Id.* ¶ 22.

Kapitus alleges that Greenville Concrete and Delloso thereafter defaulted on the settlement agreement.[14]  Per the parties' stipulation, Kapitus then obtained a judgment against Greenville Concrete and Delloso for more than $775,000 (including interest).[15]  Kapitus began attempting to enforce its judgment against Greenville Concrete.  Kapitus claims that it was not until November 2020 that it learned of the existence of Bari Concrete, which it alleges is another entity created by Delloso before he filed his bankruptcy case.  Kapitus further contends that Bari Concrete is a "mere continuation of Greenville [Concrete]."[16]  Kapitus also asserts that Delloso caused Greenville Concrete to transfer its assets, property and business to Bari Concrete, and thereafter filed a "voluntary certificate of Cancellation" on behalf of Greenville Concrete, which operates to dissolve a limited liability company under Delaware law.[17]

In 2021, Kapitus sued Bari Concrete in New York Supreme Court for successor liability and later amended its complaint to include, among other things, claims of fraudulent conveyance.[18]  Kapitus alleges that Bari Concrete was created for the sole purpose of avoiding the obligations of Greenville Concrete to pay Kapitus amounts to which it is entitled under the receivables agreement.[19]  The New York action is in its

---

[14] *Id.* ¶ 23.

[15] D.I. 17-3, Exh. B, Statement for Judgment.

[16] D.I. 17 ¶¶ 34-45.

[17] *Id.*  ¶ 15.

[18] D.I. 17-8, Exh. G, Amended Complaint.

[19] D.I. 17 ¶ 33.

early stages, the parties having served document requests but not yet engaged in active discovery.

Kapitus now moves to reopen Delloso's bankruptcy case in order to bring an adversary proceeding seeking a determination that its claim against the debtor was non-dischargeable under §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6) of the Bankruptcy Code as, among other things, a debt obtained by fraud.[20]  Kapitus also seeks to revoke Delloso's discharge under § 727(d) and to have a chapter 7 trustee appointed to administer a newly discovered asset – Delloso's equity interest in Bari Concrete.[21]

## Jurisdiction

The Court has subject-matter jurisdiction over Kapitus' motion to reopen under 28 U.S.C. § 1334(b) because Kapitus' motion "arises under" section 350(b) of the Bankruptcy Code.  As a case within the district court's bankruptcy jurisdiction, this matter has been referred to this Court under 28 U.S.C. § 157(a) and the district court's standing order.[22]  Requests for a determination of the dischargeability of particular debts and objections to a debtor's discharge are core proceedings under 28 U.S.C. § 157(b)(I) & (J), respectively.

## Analysis

Section 350(b) of the Bankruptcy Code provides that a "case may be reopened in the court in which such case was closed to administer assets, to accord relief to the

---

[20] *Id.* ¶ 31.

[21] *Id.* ¶¶ 31, 35–37.

[22] *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated Feb. 29, 2012.

debtor, or for other cause."[23]  As Judge Shannon explained in *In re New Century TRS Holdings*, the decision whether to reopen a bankruptcy case is a discretionary judgment to be made by the bankruptcy court, guided by the following non-exclusive list of considerations:

(i)     the length of time that the case was closed;

(ii)    whether a non-bankruptcy forum, such as a state court, has the ability to determine the dispute to be posed by the debtor were the case reopened;

(iii)   whether prior litigation in bankruptcy court implicitly determined that the state court would be the appropriate forum to determine the rights, post-bankruptcy, of the parties;

(iv)    whether any parties would be prejudiced were the case reopened or not reopened;

(v)     the extent of the benefit which the debtor seeks to achieve by reopening; and

(vi)    whether it is clear at the outset that the debtor would not be entitled to any relief after the case were reopened.[24]

And while this enumeration of factors presumed that it was the debtor that moved to reopen the case, these factors work equally well in a context in which, as here, a creditor moves to reopen the case if one replaces the term "debtor" in factors (ii), (v) and (vi) with "creditor."  In this case, consideration of these factors counsels against reopening the bankruptcy case.

---

[23] 11 U.S.C. § 350.  *See also* Fed. R. Bankr. P. 5010 ("A case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code.")

[24] *In re New Century TRS Holdings*, No. 07-10416 (BLS), 2021 WL 4767924, at *6–7 (Bankr. D. Del. Oct. 12, 2021) (citation omitted).

## I.    The bankruptcy case may not be reopened to bring actions under either §§ 523(c) or 727(d).

The sixth *New Century* factor stands for the commonsense proposition that there is no point in reopening a bankruptcy case at the request of the creditor if it is clear, as a matter of law, that the creditor cannot obtain the relief sought.  That is the case here.

### A.    Bankruptcy Rules 4007(c) and 9006(b) bar Kapitus' effort to assert a nondischargeability claim under Section 523(a).

Section 523(c)(1) provides that a debtor shall receive a discharge from debt specified under subsections (a)(2), (4), or (6) (the provisions under which Kapitus contends that the debt it alleges Delloso owes to it is nondischargeable) unless, upon the request of a creditor, the bankruptcy court determines that such a debt is nondischargeable.[25]   Claims seeking such a determination must, therefore, be brought in the bankruptcy court.

Bankruptcy Rule 4007(c) imposes a deadline for bringing such a proceeding, requiring that such an action be filed within 60 days of the meeting of creditors held at the beginning stages of a bankruptcy case under § 341 of the Bankruptcy Code.[26] While the Rule states that the time to file such an action may be extended "for cause,"

---

[25] 11 U.S.C. § 523(c)(1).

[26] Rule 4007(c) provides, in relevant part, that "a complaint to determine the dischargeability of a debt under §523(c) shall be filed no later than 60 days after the first date set for the meeting of creditors under §341(a) ...  On motion of any party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision.  The motion shall be filed before the time has expired."  Fed. R. Bankr. P. 4007(c).

the rule also expressly provides that such a "motion shall be filed before the time has expired" – meaning, within 60 days of the section 341 meeting.[27]

A separate Bankruptcy Rule, Rule 9006(b), deals generally with enlargement of the time provided for under the bankruptcy rules.  Rule 9006(b)(1) provides that the court may generally grant enlargements of the time periods set out in the rules – on a showing of "cause" if before the time expired and for "excusable neglect" if after the time has expired.  Rule 9006(b)(2) sets forth exceptions to that principle, identifying certain specific rules (the details of which are not relevant to this dispute) whose deadlines may not be extended.

Rule 9006(b)(3) then specifically addresses other rules, including Rule 4007(c), that by their terms set deadlines and impose restrictions on how and/or when extensions of those deadline may be granted.  Rule 9006(b)(3) states that the court may grant such enlargements "only to the extent and under the conditions stated in those rules."[28]  Rule 9006(b)(3) thus makes clear that the requirement of Rule 4007(c), that any motion to extend the period of time beyond 60 days after the section 341 meeting must be brought before the time period otherwise expires, is not one that a court may disregard, either for "cause" or on a showing of "excusable neglect."[29]

---

[27] *Id.*

[28] "The court may enlarge the time for taking action under Rules 1006(b)(2), 1017(e), 3002(c), 4003(b), 4004(a), 4007(c), 4008(a), 8002, and 9033, only to the extent and under the conditions stated in those rules."  Fed. R. Bankr. P. 9006(b)(3).

[29] "On motion of a party in interest, after hearing on notice, the court may for cause extend the time fixed under this subdivision.  The motion *shall be filed before the time has expired.*" Fed. R. Bankr. P. 4007(c) (emphasis added).

Despite the seemingly mandatory nature of the rule, courts were once divided on the question whether the time limits set out in Rule 4007(c) might be subject to principles of "equitable tolling." The Supreme Court expressly left open that question in *Kontrick v. Ryan*, where it held that Rule 4007(c) was not a "jurisdictional" rule, such that a defendant who fails to assert in its answer that a complaint is untimely will be found to forfeit the defense. [30] Because jurisdictional rules are never subject to equitable tolling,[31] had *Kontrick* found Rule 4007(c) to operate as a limit on the court's subject-matter jurisdiction, it would have necessarily followed that equitable tolling was not available.

In *Kontrick,* a creditor filed an adversary proceeding objecting to the debtor's receipt of a discharge more than 60 days after the section 341 meeting, which would render the action untimely under Bankruptcy Rule 4004. The debtor, however, responded to the complaint without raising the fact that the complaint was untimely. The court went ahead and resolved the claim on the merits, concluding that the debtor was not entitled to a discharge.

The debtor moved for reconsideration, arguing for the first time that the complaint was untimely. The bankruptcy court rejected this argument, arguing that the time limits established by Rule 4004 were not "jurisdictional" rules, and were

---

[30] *Kontrick v. Ryan*, 540 U.S. 443 (2004).

[31] *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 617-618 (3d Cir. 1998) ("when a time limitation is considered jurisdictional, it cannot be modified and non-compliance is an absolute bar"). *See also Becton Dickinson and Co. v. Wolckenhauer*, 215 F.3d 340, 344 (3d Cir. 2000) (same).

thus subject to principles of waiver and forfeiture.  That holding was affirmed by the district court, the Seventh Circuit, and ultimately the Supreme Court.

The Supreme Court explained that a court's subject-matter jurisdiction may only be created by statute.  "Only Congress may determine a lower federal court's subject-matter jurisdiction."[32]  The deadline for objecting to a debtor's discharge, however, is not statutory, but rather is set forth in the Bankruptcy Rules.  Such rules, the Court explained, cannot "create or withdraw federal jurisdiction."[33]

Because the Court found that the "claims processing" rules set out in Bankruptcy Rules 4004(a) and 9006(b) were not jurisdictional in nature, the Court found that they could be forfeited if not asserted promptly.[34]  "Ordinarily, under the Bankruptcy Rules as under the Civil Rules, a defense is lost if it is not included in the answer or amended answer."[35]  And since the deadlines set out in Bankruptcy Rules 4004(a) and 9006(b) were not unalterable rules of subject-matter jurisdiction, the Court found that the defense that the claim was asserted outside the deadline established by these rules, like any other non-jurisdictional defense, could be forfeited by the debtor if it is not asserted in a timely manner.

While *Kontrick* by its terms was focused on Rule 4004(a) (which governs the time for objecting to the debtor receiving a discharge) rather than Rule 4007(c) (which

---

[32] *Kontrick*, 540 U.S. at 452.

[33] *Id*. at 453 (citation omitted).  *See also* Fed. R. Bankr. P. 9030 (the Bankruptcy Rules "shall not be construed to extend or limit the jurisdiction of the courts").

[34] *Id*. at 456

[35] *Id*. at 459.

governs the time for bringing a nondischargeability action), the Court made clear that its analysis applied equally to both rules. As the Court explained, both rules set time limits for bringing certain actions. And Bankruptcy Rule 9006(b)(3) "lists Rule 4007(c) as well as Rule 4004(a) among time prescriptions bankruptcy courts may enlarge 'only to the extent and under the conditions stated [in the rules themselves].'"[36] Accordingly, "courts have considered decisions construing Rule 4007(c) in determining whether the time limits delineated in Rules 4004(a) and (b) may be forfeited."[37] It was therefore clear, after *Kontrick*, that Rule 4007(c) did not affect a court's subject-matter jurisdiction.

The fact that a rule is *not* jurisdictional, however, does not always mean that courts are free to apply equitable tolling. When the Supreme Court held in *Kontrick* that the time limits of Bankruptcy Rules 4004 and 9006 could be forfeited if not raised in a timely manner, it thus expressly left open the question whether they could be subject to equitable tolling: "Whether the Rules, despite their strict limitations, could be softened on equitable grounds is therefore a question we do not reach."[38] Accordingly, both before and after *Kontrick*, courts had divided on whether the deadlines set out in Bankruptcy Rules 4004 and 9006 were subject to equitable tolling.[39]

---

[36] *Kontrick*, 540 U.S. at 448 n.3.

[37] *Id.*

[38] *Id.* at 457. *See also Hamer v. Neighborhood Housing Services*, 138 S. Ct. 13, 18 n.3 (2017) ("We have reserved whether mandatory claim-processing rules may be subject to equitable exceptions.").

[39] *See, e.g.*, *Fed. Ins. Co. v. United States*, 882 F.3d 348, 361 (2d Cir. 2018) ("Claim-processing rules, much like statutes of limitations, . . . may be subject to equitable tolling doctrines.");

The answer to that question, the Supreme Court has explained in other contexts, must be derived from the language and context of the rules themselves. As "a general matter, equitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action."[40]  Circumstances in which a defendant's fraud or concealment prevent a plaintiff from learning of, and thus pursuing, a cause of action present paradigmatic cases for the application of equitable tolling.[41]

But since (in the context of statutorily prescribed limitations periods) equitable tolling "effectively extends an otherwise discrete limitations period set by Congress, whether equitable tolling is available is fundamentally a question of statutory intent."[42]  Because Congress "legislate[s] against a background of common-law

---

*In re Maughan*, 340 F.3d 337 (6th Cir. 2003) (holding that the bankruptcy court did not abuse its discretion in using its equitable powers to allow a creditor's complaint, which was filed after the deadline set forth in Bankruptcy Rule 4004, to go forward); *Farouki v. Emirates Bank Int'l*, 14 F.3d 244, 248 (4th Cir. 1994) (holding that Bankruptcy Rule 4004(a)'s deadline "does not preclude the bankruptcy court from exercising its equitable powers in extraordinary cases."); *In re Greaux*, No. 14-12441, 2016 LEXIS 2292, at *2 (Bankr. E.D. Pa. June 15, 2016) (holding that the Court's decision in *Kontrick* implied that claim-processing rules were subject to equitable tolling); *but see In re Dunlap*, 217 F.3d 311, 316 (5th Cir. 2000) ("there is no provision for a tolling regime found in the relevant portions of the Bankruptcy Code or Rules," and that "a tolling rule fails to comport with the purpose of [Bankruptcy] Rule 4007(c) . . ."); *In re Mazik*, 592 B.R. 604, 611–12 (Bankr. E.D. Pa. 2018) (recognizing that courts are split on this issue); *In re Miller*, 333 B.R. 368, 372 (N.D. Tex. 2005) (holding that equitable tolling cannot be raised as a defense to a motion to dismiss an untimely dischargeability action).

[40] *Lozano v. Montoya Alvarez*, 572 U.S. 1, 10 (2014).  *See also United States v. Wong*, 575 U.S. 402 (2015) (time limitations under the Federal Tort Claims Act are subject to equitable tolling).

[41] *See generally Klehr v. A.O. Smith Corp.*, 521 U.S. 179 (1997).

[42] *Lozano*, 572 U.S. at 10.

adjudicatory principles," including the doctrine of equitable tolling,[43] it presumed that "equitable tolling applies if the period in question is a statute of limitations and if tolling is consistent with the statute."[44]  Where the limitations period is imposed by rule rather than statute, the question is whether equitable tolling is consistent with the terms of the rule.[45]

Here, it is clear that equitable tolling would be inconsistent with the command of Rule 9006(b) stating that the time periods set out in Rule 4007(c) may be extended "only to the extent and under the conditions stated in" the Rule.  Permitting equitable tolling would operate to extend the time limit under conditions *not* stated in the rule itself.  That is precisely what Rule 9006(b) expressly forbids.

While the Supreme Court left this issue open in *Kontrick*, it effectively resolved it in *Nutraceutical Corp. v. Lambert*.[46]  That case involved Federal Rule of Civil Procedure 23(f), which provides that a party must ask for permission from the court of appeals to bring an appeal from a class certification decision "within 14 days after the order is entered."[47]  The question was whether that rule was subject to equitable tolling.  Citing *Kontrick*, the Court first found that the rule was not "jurisdictional."[48] But that did not resolve the question.  "The mere fact that a time limit lacks

---

[43] *Id.* (citation and brackets omitted).

[44] *Id.* at 11.

[45] *See generally Bank of Nova Scotia v. United States*, 487 U.S. 250, 255 (1988) (rules promulgated under Rules Enabling Act are "as binding as any statute duly enacted by Congress."

[46] 139 S. Ct. 710 (2019).

[47] Fed. R. Civ. P. 23(f).

[48] *Nutraceutical*, 139 S. Ct. at 714.

jurisdictional force," the Court explained, "does not render it malleable in every respect."[49]  Instead, the question is whether "the text of the rule leaves room for such flexibility."[50]  When a rule shows "a clear intent to preclude tolling, courts are without authority to make exceptions merely because a litigant appears to have been diligent, reasonably mistaken, or otherwise deserving."[51]

The Court went on to conclude that the rules did demonstrate an intent to preclude tolling.  The basis for that conclusion came from Federal Rule of Appellate Procedure 26(b), which states that a court "may not extend the time to file … a petition for permission to appeal."[52]  This language, the *Nutraceutical* Court explained, "express[es] a clear intent to compel rigorous enforcement of Rule 23(f)'s deadline, even where good cause for equitable tolling might otherwise exist."[53]

Significantly, the Court relied on its prior decision in *Carlisle v. United States*[54], which addressed the requirement in Federal Rule of Criminal Procedure 29(c) that any motion filed after a verdict seeking a judgment of acquittal be filed within 7 days after the jury is discharged, or such time as the court may direct before the expiration of the 7-day period.  Federal Rule of Criminal Procedure 45(b), in language that closely tracks that of Federal Rule of Bankruptcy Procedure 9006(b)(3),

---

[49] *Id.*

[50] *Id.*

[51] *Id.*

[52] Fed. R. App. P. 26(b).

[53] *Nutraceutical*, 139 S. Ct. at 715.

[54] 517 U.S. 416 (1996).

said the time limits under Criminal Rule 29 could not be extended "except to the extent and under the conditions" stated therein.[55]  *Carlisle* held that this language precluded a district court from granting a motion for a judgment of acquittal that was filed eight days after the jury was discharged.  Relying on that authority, the *Nutraceutical* Court found that the 14-day period established by Civil Rule 23(f) was not subject to equitable tolling.

This precedent compels the conclusion that the nearly identical language of Bankruptcy Rule 9006(b) be read the same way as Criminal Rule 45(b) – to prohibit the equitable tolling of the time periods established by Rule 4007.  In a thoughtful analysis, Judge Altenburg of the Bankruptcy Court for the District of New Jersey addressed this very question, holding that the Supreme Court decision in *Nutraceutical* effectively precludes a court from applying equitable tolling to the deadlines established by Bankruptcy Rule 4007(c).  "Just as with Appellate Rule 23(f), the Bankruptcy Rules 'express a clear intent to compel rigorous enforcement' of Rule 4007(c)'s deadline 'even where good cause for equitable tolling might otherwise exist.'"[56]

In response to this analysis, Kapitus makes essentially three points.  *First*, Kapitus points out that the *Zakarin* case was out of a different district, while precedent from this Court, specifically Judge Walsh's opinion in *In re Rychalsky*,[57]

---

[55] *Compare* Fed. R. Bankr. P. 9006(b)(3) (time limits of Bankruptcy Rule 4007(c) can be extended "only to the extent and under the conditions" stated therein).

[56] *In re Zakarin,* 602 B.R. 275, 283 (Bankr. D. N.J. 2019) (quoting *Nutraceutical,* 139 S. Ct. at 710.).

[57] 318 B.R. 61 (Bankr. D. Del. 2004).

permitted equitable tolling in the highly analogous context of the time period for objecting to a debtor's discharge under Rule 4004.[58] That much is true. As described above, in the period between the Supreme Court's decisions in *Kontrick* (in 2004) and *Nutraceutical* (in 2019), the question whether Rules 4004 and 4007 were subject to equitable tolling was unresolved by the Supreme Court, and lower courts had divided on this issue.[59] *Rychalsky* was among the cases that had concluded that the time limits of Rule 4004 could be equitably tolled. But as described above, that reasoning has since been rejected in *Nutraceutical*. This Court is unaware of any decision, since *Nutraceutical*, to have applied equitable tolling to the time limits of Rules 4004 or 4007. Kapitus points to none.[60]

---

[58] Rule 4004(a) provides that an objection to a discharge must be made within 60 days of the section 341 meeting. Rule 4004(b)(1) states that the time period may be extended "for cause" so long as the motion to extend is filed before the period to file such a motion has expired. Rule 4004(b)(2) states that if such an motion to extend is not filed within the time prescribed by Rule 4004(b)(1), the Court may still permit an objection to the discharge, if the discharge has not already been granted, if (A) it is based on facts that would provide a basis for revoking the discharge had it already been granted, and (B) the movant did not have knowledge of the facts in time to permit an objection. The time periods of Rule 4004(a), like those of Rule 4007(c), is specified in Rule 9006(b)(3) as a time period that can only be extended "only to the extent and under the conditions stated" in those rules. As described below in Part I.B of this Memorandum Opinion, the revocation of a discharge once it has been granted is not the subject of any bankruptcy rule but is instead governed by the terms of 11 U.S.C. § 727(d) and (e).

[59] *See supra* n.37.

[60] *In re Podwinski*, No. BK19-41937-TLS, 2021 WL 371769 (Bankr. D. Neb. Feb. 2, 2021), relying on pre-*Nutraceutical* precedent from the Eighth Circuit Bankruptcy Appellate Panel, applied principles of equitable tolling to determine whether the deadline for bringing a non-dischargeability should be equitably tolled and concluded that the creditor had not exercised sufficient diligence to warrant the equitable tolling of Rule 4007(c)'s deadline. *Id.* at *6, *9 (citing *In re Harbaugh*, 301 B.R. 317, 320 (8th Cir. BAP 2003). Significantly, however, the decision makes no mention of *Nutraceutical* and it does not appear that any of the parties argued that the case called into question the precedent on which the court relied.

*Second*, Kapitus seeks to distinguish *Nutraceutical* on the grounds that (i) deadlines for filing suit are more in the heartland of where one would expect equitable tolling to apply than are appellate deadlines like the one at issue in Nutraceutical and (ii) the language of Federal Rule Appellate Procedure 26(b) is more emphatic about precluding extensions than is Bankruptcy Rule 9006(b)(3). The first of those contentions may be true but is ultimately beside the point. As described above, Kapitus is right that statutory deadlines for filing a lawsuit present the paradigmatic case for the application of equitable tolling. But even so, whether equitable tolling will apply is ultimately a question about the intent of Congress (in the case of a federal statute of limitations) or the Advisory Committee (in the case of a procedural rule promulgated by the Supreme Court). The relevant question is not how strong the case for equitable tolling would be *without* Rule 9006(b)(3) but rather whether Rule 9006(b)(3) evinces an intent to preclude the doctrine in this context. And for the reasons described above, the answer to that question is "yes."

The comparison between Appellate Rule 26(b) and Bankruptcy Rule 9006(b)(3) is no more availing. Both rules make perfectly clear, in ordinary English, that the applicable periods cannot be extended. So long as the language of the rule is clear, it is not the role of the courts to require the Advisory Committee to use some form of magic words to say that a particular deadline may not be extended. "The court may enlarge the time for taking action under Rule[] … 4007(c) … only to the extent and under the conditions stated [therein]" means that if the ground for the extension is not set forth in the rule, it is not permitted. And Rule 4007(c) makes clear that the

deadlines can be extended for cause if and only if the request is made within 60 days of the section 341 meeting.  While the precise words are different from those used in Appellate Rule 26(b) ("the court may not extend the time to file … a petition for permission to appeal"), the import is the same.

*Finally*, Kapitus relies on the Supreme Court's decision in *Marrama v. Citizens Bank of Massachusetts*[61] for the proposition that bankruptcy is intended to benefit the "honest but unfortunate debtor" and that the broad remedial powers codified in section 105 of the Bankruptcy Code must always be available to root out fraud that threatens the integrity of the bankruptcy process.  If section 105 means anything, Kapitus' counsel argued, it means that bankruptcy courts have the authority to do whatever is necessary address fraud committed in the bankruptcy case itself.

While section 105 certainly does mean something, the Supreme Court has made clear that it does not mean that.  The basic holding of *Marrama* was only that a debtor whose bad faith conduct rendered him ineligible to proceed in a chapter 13 case could be denied the right, under section 706(a), to convert from chapter 7 to chapter 13.  And to the extent one might have been inclined to read *Marrama* more broadly as a sweeping authority for bankruptcy judges to take any and all action they deem necessary to root out fraudulent conduct in bankruptcy cases, such a reading cannot survive *Law v. Siegel*.[62]

---

[61] 549 U.S. 365 (2007).

[62] 571 U.S. 415 (2014).

The debtor in that case engaged in egregious fraud, filing a false lien against her own house to deceive the chapter 7 trustee into thinking there was no equity value to be distributed to creditors.[63]  The bankruptcy court, exercising the authority granted in the second sentence of section 105(a) of the Bankruptcy Code to take action "to prevent an abuse of process," sanctioned the debtor by imposing a surcharge on the debtor's homestead to pay (in part) the trustee's attorneys' fees incurred in ferreting out the fraud.  The Supreme Court, however, held that sanction to be impermissible under section 522(k), which states that a homestead exemption is "not liable for payment of any administrative expense."

The Court expressly rejected the argument that, under *Marrama*, a court could do anything and everything it deemed appropriate to eliminate fraud.  "At most, *Marrama*'s dictum suggests that in some circumstances a bankruptcy court may be authorized to dispense with futile procedural niceties in order to reach more expeditiously an end result required by the Code.  *Marrama* most certainly did not endorse, even in dictum, the view that equitable considerations permit a bankruptcy court to contravene express provisions of the Code."[64]

To be sure, it is true that Rule 9006(b) is a rule rather than a statute and that a rule of procedure that conflicts with a federal statutory directive is invalid (since, under the Rules Enabling Act, procedural rules may not abridge substantive rights).[65]

---

[63] *Id.* at 419.

[64] *Id.* at 426.

[65] *See Burlington Northern R.R. Co. v. Woods*, 480 U.S. 1 (1987).

But there is no such conflict. Nothing in Rule 9006(b) prevents a bankruptcy court from taking appropriate action to address an abuse of process. The rule merely imposes a time limit on a creditor's ability to point to a debtor's (pre-bankruptcy) fraud as a basis for contending that a particular debt is nondischargeable. That poses no conflict with the grant of authority provided in § 105.

### B.    Section 727(e) bars Kapitus' effort to revoke Delloso's discharge.

Kapitus alternatively argues that, if it is not given leave to contend that the debt owed to it is nondischargeable, it should be permitted to bring an adversary proceeding seeking a revocation of the debtor's discharge altogether. The Court will not reopen the bankruptcy for that purpose, since such an action is squarely and unambiguously precluded by the plain text of the Bankruptcy Code.

The discharge of a chapter 7 debtor is governed by § 727 of the Bankruptcy Code. Section 727(a) sets forth the bases on which a discharge may be denied. An individual debtor's hiding assets from a chapter 7 trustee in order to keep them from creditors (either during the bankruptcy or within one year prior thereto) is certainly a basis on which a discharge may be denied.[66]

Section 727(b) describes the effect of the discharge while § 727(c)(1) permits the chapter 7 trustee, a creditor, or the United States Trustee to object to a debtor's discharge.[67] Where there is uncertainty about the debtor's entitlement to a discharge, § 727(c)(2) provides that on a motion from any party in interest, the court may "order

---

[66] 11 U.S.C. § 727(a)(2).

[67] *Id.* § 727(c)(1).

the trustee to examine the acts and conduct of the debtor to determine whether a ground exists for denial of the discharge."[68]   The time in which to object to the discharge is not set forth in the statute but is provided for (as mentioned above) in Bankruptcy Rule 4004, the terms of which are summarized above.[69]

Once the discharge is granted, the revocation of that discharge is addressed by §§ 727(d) and (e) of the Bankruptcy Code.   Section 727(d)(1) addresses the precise circumstance Kapitus alleges is present here, providing that "the court shall revoke a discharge granted under subsection (a) if … such discharge was obtained through the fraud of the debtor, and the requesting party did not know of such fraud until after the granting of such discharge."[70]

Section 727(e), however, provides a time limit for bringing such an action.   "The trustee, a creditor, or the United States trustee may request a revocation of the discharge … under subsection (d)(1) of this section within one year after such discharge is granted."[71]   Because that time has long passed, the action Kapitus seeks to bring is barred by the statute.

In response, Kapitus makes a variant of the same argument described above – that the time limits should be tolled on account of the debtor's fraud.   But while that argument was plausible (albeit ultimately incorrect) in the context of Bankruptcy Rule 4007, having been an issue on which there was disagreement among the courts

---

[68] *Id.* § 727(c)(2).

[69] *See supra* n.58.

[70] 11 U.S.C. § 727(d)(1).

[71] *Id.* § 727(e)(1).

until the Supreme Court's decision in *Nutraceutical*, in the context of § 727 it is not. As *Colliers* explains, the one year period "undoubtedly begins to run from the date of the entry of the order of discharge, and not from the discovery of the fraud."[72] Indeed, while Bankruptcy Rule 9024 makes Civil Rule 60 (which generally provides for relief from a final judgment on account of fraud) applicable to bankruptcy cases, the rule expressly states that "a complaint to revoke a discharge in a chapter 7 liquidation case may be filed only within the time allowed by § 727(e) of the Code."[73] As a result of this language, as *Colliers* puts it, the "one-year period is not tolled by the debtor's concealment of assets or the doctrine of equitable tolling."[74] The Court accordingly will not reopen the bankruptcy case for the purpose of permitting such an action.

## II.   There is no need to reopen a long-closed bankruptcy case to administer the alleged asset because Kapitus may obtain relief in the New York Action.

Finally, Kapitus asks that the Court reopen the bankruptcy case so that a trustee can administer a newly discovered asset – the debtor's equity interest in Bari Concrete. But as Judge Shannon explained in *New Century*, one of the factors a court should consider on a motion to reopen the case is whether a state court has the ability to provide the movant the relief they would seek to obtain by reopening the case.[75] To the extent the movant can be compensated in full on any valid claim outside of bankruptcy, that factor counsels strongly against reopening a bankruptcy case.

---

[72] 6 *Collier on Bankruptcy* ¶ 727.18 (16th ed. 2022).

[73] Fed. R. Bankr. P. 9024.

[74] 6 *Collier* ¶ 727.18.

[75] *New Century*, 2021 WL 4767924, at *6–7.

Here, Kapitus has a lawsuit, pending in state court in New York, in which it seeks to recover against Bari Concrete on successor liability and fraudulent conveyance grounds. If that case is litigated to judgment, Kapitus will either win or lose. If it prevails and obtains a judgment, it will be entitled to full array of creditor remedies to enforce that judgment against the assets of Bari Concrete. If it loses, it will be because a court of competent jurisdiction will have determined that Bari Concrete is not liable on Kapitus' claims.

Against that backdrop, it is difficult to see what would be added by reopening the bankruptcy case and having a trustee administer the alleged asset – the debtor's equity interest in Bari Concrete. To the extent the equity interest has any value, it would only be because Bari Concrete has valuable assets. Kapitus provides no reason to believe that the access it would have to those assets through the reopening of the bankruptcy case would be more efficacious or appropriate than the circumstance it would face if it were left to exercise state law creditor remedies.

Accordingly, because the Court sees little (if any) incremental benefit to reopening the bankruptcy case to administer the alleged newly discovered asset over Kapitus' potential remedy currently pending in its New York state court action, the Court will deny Kapitus' motion to reopen.

## Conclusion

In sum, having considered the allegations in Kapitus' motion and the factors identified in *New Century*, the Court does not believe it appropriate to reopen the bankruptcy case to permit Kapitus to pursue the claims described in the motion or to appoint a trustee to administer the allegedly newly discovered asset.

Accordingly, the Court will enter a separate order providing that the Motion is

DENIED.

Dated: March 24, 2022

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE